Good morning, Your Honours. May it please the court, Joseph Horry here representing the plaintiff and appellant Pedro Pinaula. Your Honours, Mr. Pinaula was injured in a boating accident off the coast of Saipan in August of 2007. It was a boat swimmer collision. He was the swimmer. In his action against the pilot of the boat, the district court found the pilot negligent. It also found that Mr. Pinaula's damages were $1,200 per month. Neither of those findings has been appealed by the pilot. Mr. Pinaula appeals from two findings of the district court. First of all, it's finding that the duration of his injury was six months. Secondly, it's finding that he was 50% negligent and at fault in the accident. First, let me address the issue of the duration of the injury. The district court's finding of a six-month duration of the injury was inconsistent with the evidence that was inconsistent with the court's own other findings of fact. To begin with, it is inconsistent with the evidence upon which the court purported to base it, namely Mr. Pinaula, both of which indicate a substantially longer duration of the injury. It is also inconsistent with the court's own findings of fact, which find that the injury began shortly after the accident in August of 2007 and continued to exist for several months after he was examined and diagnosed by Dr. Hutchison in April of 2008. The April diagnosis itself was eight months after the accident. It's been said that the court estimated the time of the duration of the injury, and sometimes it is necessary to make an estimation. For example, you could estimate the monthly damages, the economic loss from fishing, the damages for pain and suffering. All of those had to be, to some extent, estimated. But an estimate still has to make sense. The evidence that the court accepts and the findings of fact that it makes limit its ability to estimate. So where you find as a fact, as the district court did, that the injury occurred in August, and you find as a fact that the injury was still present in April, eight months later, and you find as a fact that it continued to occur, you cannot then estimate that it lasted six months. The court's math here basically amounts to eight plus x equals six, in a situation where we know from the court's own finding that x is a positive number. That is the kind of math that if any of my kids were to do that on their math homework, the teacher would circle it with a red pen and would say, clear error. And that's what the court should say here as well, that was clear error on the part of the district court as to the finding of the duration of the injury. Now we did bring this to the attention of the district court below. And the court tried to explain it in a number of ways. It relied most heavily on what it found was an eight-month period in which Mr. Penaula did not seek medical assistance. And the court several times in its ruling on the motion to amend relied on this supposed eight-month period. In fact, the evidence does not show any eight-month period. It clearly shows, and the appellee admits in their own brief that it shows, at most a three-month period from the accident until Mr. Penaula first sought medical assistance. So the eight-month period on which the district court justified is unsupported by the evidence. It is contrary to the evidence. The court mentioned a couple of other factors regarding whether any other health issues of Mr. Penaula stemmed from the injury. It mentioned that some, it's finding, determining whether the testimony of Mr. Penaula's wife was not credible and mentioned those partly in support of its finding. Those issues, however, while they may go to the amount of damages and the monthly amount and may have been taken into account in that context, do not affect the duration of the injury because the court found, despite whatever its misgivings about Linda's testimony, that the injury suffered during the accident, which is the only injury referenced in the findings in fact, still existed in April, continued to exist for some time after that. So the question is, what is the right figure if not six months? To the best, we can say at this point it is, well, I guess what I said earlier, eight plus X. Beyond that, some require remand to the district court. There may be questions such as, did it last all the way to the physical therapy in January of 2010 or did it resolve itself sometime short of that? Were the damages for the monthly amount the same all that time? Should any of it be reduced for failure to mitigate? These are issues that probably have to be resolved in the first instance by the district court on remand. But the six-month figure that the district court did find was clearly erroneous and the figure is, based on the evidence, cannot be less than eight months plus some further months of a number the court did not specify but did indicate was a period of months. The second issue is contributory negligence. In addressing this issue, the court did not agree. It applied a relative rather than an objective standard of care. It found that Mr. Pinaula was negligent because he could have but did not use some safer method of marking his position in the water. He used what's called an M-boat. It's a white styrofoam cooler that is attached to his waist by a rope. It floats along with him as he swims in the ocean and it serves two purposes. He puts his catch into the box as he catches it and it also marks his position in the water so that boats will see him and be able to avoid him. The testimony was that that is the customary practice of the fishermen around Saipan to use. We've lost the video feed as well. Do you have, can you hear us? Just a moment. Excuse me, your honor, we briefly lost the feed. Can the court hear me now? Yes. Yes, we can hear you. Can you hear us? I can't, I can't hear the court. Just a minute, we'll have somebody here in just a moment to take a look at the technical side. We lost connection. Let's disconnect and connect up again. Yes, sir, can you hear us? Testing one, two, three, can you hear us? Testing one, two, three, testing one, two, three. Testing one, two, three, testing one, two, three. We heard that. Can you hear us? Yes, I can hear you. Shall I proceed? Yes, please. Okay. I was just describing the method used to, the M-boat, the cooler used to mark Mr. Piniella's position in the water, also to store his catch. The court felt that some other method would have been safer than that, as the defendant also argued. But that's not conclusive of the question of whether he was negligent. We can assume, arguendo, that some other method might have been safer. A diver's flag, for example, might have been safer. I don't know that it necessarily would have, but we can assume, arguendo, that it would. Because even if it would, that is not sufficient to find Mr. Piniella negligent in not using one and in using the method that he used. Instead, the court must find that the actual method he used is objectively unsafe, and that he knew or should have known that. It's unclear whether the court found it objectively unsafe or just by comparison. Even if the building is read as finding objectively unsafe, its stated basis for holding that do not withstand scrutiny. For example, the court found it can get dirty. Of course, anything can get dirty. A dive flag can get dirty. Any method of marking can get dirty out in the open sea. There is no finding that it was dirty. There is no evidence that it was dirty. There is no evidence that it was obscured by straps or any other type of obstruction wrapped around it. As the court can see from the picture of it depicted in the exhibits, it was not obstructed. The court called it decrepit-looking. But the fact, Your Honor, is it is not a question of aesthetics, whether something is safe or whether the person using it is negligent. What you need to show to show Mr. Piniella negligent, or to even show that it was dangerous, is evidence that it is not visible, that the M-boat is not visible within a sufficient distance to be avoided by passing boats. And there was no such evidence. Furthermore, there must be evidence that Mr. Piniella knew or should have known that it was dangerous. There is no evidence of that either. All the evidence was to the contrary. The evidence was that in his 30 years of experience, all of which he had used the M-boat, he had never had an accident with a boat. His experience was that boats slow down when they get near him because they see the M-boat. The evidence was that this is the typical practice of his fellow fishermen. The evidence was that an M-boat was actively recommended. The chief of boating safety of the CNMI testified that he regards an M-boat as equally safe, equally effective to a diver's flag, that he uses one himself when he's fishing, and that he actively goes out and recommends to other fishermen that they use an M-boat such as Mr. Piniella was using. That is the evidence, that is the circumstances within which he was operating, and within that background, there is no basis for any finding that he knew or should have known there was anything unsafe about the use of an M-boat. The problem, Your Honors, with what the court did and what defendant is doing is using a comparative basis, is that when you do it that way, everyone is negligent, because there's always a safer way to do something. If a red flag is safer than an M-boat, then maybe a higher flag or a bigger flag is safer than a smaller one. Maybe a flag with a flashing light on top is safer still. If Mr. Piniella had used a red flag, then defendant could say, well, you could have used the big 10-foot inflatable buoy that is sometimes used. Conversely, if he had only used the boogie board, they could say, you could have used an M-boat. There's always something that could be improved upon. It is misleading and it is erroneous to base a finding of his negligence on a comparison between what he used and something else without a finding that the method he used is itself dangerous and that he knew it or should have known it, and there was no such evidence. The inquiry has to stay focused on what a reasonable person would do to safeguard himself. In light of his experience, in light of the custom, in light of the usage, in light of the testimony of the boating safety and recommendations, the only conclusion is that he took reasonable precautions to safeguard himself by using that M-boat, that he was not negligent in any percentage in this matter. If the Court has no questions, I'd like to reserve the rest of my time for rebuttal. Thank you, counsel. Good morning, Your Honors. I'm Dick Pierce for Seahorse Saipan Inc. in Bangabadia. We have submitted the briefs, and unless the Court has any particular questions, I feel no need to make any additional argument to the Court. Thank you, counsel. Thank you, Your Honor. All right. The case just argued will be submitted. There's no rebuttal because there's nothing to rebut. Thank you very much. Thank you, Your Honors. The Court will stand in recess for the day. I'll rise. The Court for this session stands adjourned.
judges: Reinhardt, Thomas, Paez